Bouldin, J.,
delivered the opinion of the court.
On the 1st day of April 1851, and many years prior thereto, John Southgate, Tazewell Taylor and others, *255 and those under whom they claimed, were the owners in fee simple of certain wharf property in the city of Horfolk on the waters of Elizabeth river, on the north side thereof. In this property and claimed by said owners as part thereof, is a small dock opening on the South into the main channel of Elizabeth river, and supplied by tfie waters thereof, extending back into the property aforesaid at right angles to said channel, or nearly so, and surrounded on the north, east and west by said property. There are wharves on that portion of the property fronting on the main channel of Elizabeth river, which however have been neglected, and also on the east and west sides of the dock aforesaid; and when all the property was owned by the said Southgate and others and their grantors this dock Was used for the -common benefit of the wharves. The tide ebbs and flows into the dock, and the whole of itis below low water mark. The wharf property around the dock was also originally below low water mark, and has been filled up by artificial means; but, when, or by whom does not appear. Ho witness examined in the cause seems to have known or heard when the wharves' and dock were first constructed; and as far back as the testimony reaches the dock appeal’s to have been regarded and treated as well by the reputed owners as by the State and City authorities and others, as private property. The entire dock is within and above the Port Wardens’ line ; and as stated above, Southgate, Taylor and others, and their predecessors have always claimed to own it in fee simple as a private dock.
In this state of facts, on the 1st day of April 1851, John Southgate, Tazewell Taylor and wife and the other owners of the property aforesaid,' by deed of that date, conveyed to Josiah Wills a portion of said wharf property particularly discribed in the deed. The Eastern *256 boundary property sold is described as follows : viz: “ Beginning on the south side of the street proposed to be opened and designated as Mvison street, at a point which extended southernly, strikes the logging on west^ s^e small dock owned by the parties of the first part, thence running southernly along the west side of said dock and to the channel of Elizabeth river, ” &c.,&c. The boundary then extends westwardly along the channel of Elizabeth river, thence North to Mvison street, thence along Nivison street to the beginning; making the western side of the dock the eastern boundary of the- property conveyed, and embracing no portion of the dock within its limits. The property within the limits aforesaid loith its appurtenances, is conveyed to Wills, with general warranty, and no mention is made of the dock in the granting part of the deed, excepting to refer to it as the eastern boundary of the property sold, and to describe it as “ owned by the parties of the first part.”
But immediately following the «grant and warranty is a special covenant in the following words: “ And the said parties of the first part hereby convenant to allow the said Josiah Wills to have the common use with themselves or their tenants of the dock herein first mentioned, for the purpose of landing goods on his wharf' from vessels or boats which may enter therein, as long as the said dock and adjoining premises are owned by said parties of the first part, or until they may choose to fill up the said dock. The said Wills, in consideration thereof, hereby undertaking to clean out, from time to time, the said dock at his own expense. ”
On the 23 day of March 1854, Southgate, Taylor and others, grantors in the deed to Wills, ceased to own the residue of the property, first mentioned, including said dock, having on that- day sold and conveyed the same *257 to Robert M. Ball, A. F. Santos and John Mellen of the City of Norfolk, with general warranty, making the western side of said dock their eastern boundary, and thu 5 embracing within the grant all the dock.
The appellant claims under the deed to Wills, the appellees under the deed to Ball, Santos and Mellen.
The appellant and those under whom he claims, seem to have enjoyed from the date of the deed to Wills, down to the date of the proceeding sought to be enjoined, the common use of the dock for the purpose of landing goods on their wharf, but not to charge dock-age. The appellees had the same use of the dock, but also when they thought proper to charge it, received dockage from all vessels entering the dock.
In February 1869 the appellee, McCullough, representing in his own right and as tenant the entire interest conveyed to Ball, Santos and Mellen, by the deed of the 23d of March 1854, commenced driving piles in said dock on the Western side thereof near the appellant’s wharf, with the purpose of erecting thereon a fence so as to exclude the appellant from the further use of the dock. The suit below was instituted to enjoin this pi'oceeding of McCullough, the plaintiff claiming in his original bill under the deed of April 1, 1851, to Josiah Wills alone. The injunction was awarded. In the course of the proceeding amended bills were filed, in one of which the title of the original grantors, South-gate, Taylor and others, to the dock, was denied, and the right of the State thereto was asserted as part of Elizabeth river below low water mark, and therefore a public highway open to all citizens of the State. On final hearing the injunction was dissolved and the bill dismissed with costs; and from that decree an appeal was taken by Hardy to this court.
*258 The first two errors assigned run into each other, and will be considered together. They are that the injunc- ' tion instead of being dissolved, should have been perpetuated.
1. Because, “ if the dock was the property of the grantors in the deed to Josiah Wills, then that deed passed to Wills the right to use it i¿ connection with his wharf, by way of easement as parcel of the subject especially granted.”
2. Because, “The right to use the dock passed to Wills, also, upon the principle that where the owner of a heritage consisting of two parts, grants one of them, the grant will by implication pass all those continuous and apparent easements which have in fact been used by the owner during the unity of ownership and possession, though they have no legal existence as proper technical easements.”
In considering these propositions and their application to the case at bar, the general subject of easements and servitudes has been ably and elaborately discussed by the counsel on both sides, and the authorities on the questions carefuly collected and examined; but as the same subject has been veryrecently investigated, (for the first time I believe,) by this court, in the case of Scott v. Beutel, reported supra 1, where the same authorities were reviewed, we will content ourselves by a reference to the law in such cases as there laid down by the court. It was a case coming within the class referred to in the second proposition of the appellant aboved stated; and Judge Christian delivering the unanimous opinion of court, said:
“The owner of two tenements who sells one and retains the other, may undoubtedly grant the right of drain or not to pass with the estate conveyed, or may reserve such right over the estate conveyed for the bene *259 fit of the one retained as he pleases. It is generally a matter of contract; and must be determined by the contract of the parties. Where the intention of the parties is not expressed, in terms, the construction of the contract will depend on the facts of each particular case.
“ In certain cases, by implication of law, where the owner of two tenements has so arranged them that one derives a benefit from the other, and sells one of them, the purchaser of the tenement takes it with all the beu e-fits and burdens lohich appear at the time of sale to belong to it, as between it and the property which the vendor retains. The parties are presumed to contract in reference to the condition of the property at the time of sale. Washburne on Easements, 2d ed. p. 76, (Marg. 49.) But whether the estate sold be the dominant or servient estate, it is well settled (by numerous-cases in England and in the States of the Union) that the easement or other incident of property in order to pass by implication must be open, visible, apparent and continuous; and it seems to be equally well settled that where the servient estate is granted and the dominant reserved, the easement reserved by implication must be, not only one that is apparent and continuous and such as is indicated by the condition of the premises at the time of the sale, but the easement claimed must be one strictly of necessity, so that another cannot be substituted at a reasonable expense.” Washburne on Easements, 2d Ed. 71-8, and cases there cited; 10 Allen 11. 366; 7 Allen R. 369; 2 Metc. R. 234; 2 Cush. R. 327; 31 Law J. ch. 610; 2 Eq. Cases 508; 33 L. J. ch. 249; and Russell v. Harford, L. R. 2 Eq. 507; Scott v. Beutel, supra 1.
We have thus stated the conclusions of this court, in the case of Scott v. Beutel, at greater length, perhaps, than is necessary in the present case. We understand *260 from that decision, that the question whether an easement or sei'vitude will be created, or pass as incident to or part of the property granted, is a matter of contract, and must of course depend on the intention of the parties, as expressed in the contract. If thus expressed, the terms of . the contract must control its construction. When not thus expressed, the construction will be controlled by the use and condition of the property at the time of sale, and certain implications or presumptions of law arising thereon. But these implications or presumptions will only be applied in the absence of an express contract on the subject between the parties. Where there is such contract, the case must be governed by it “ upon the ground of convention, between those who have a disposing power.”
To apply this law to'the case before us, had the deed to Mills, under which the appellant claims, conveyed the wharf properly, with its appurtenances, to Wills, with general warranty, with no reference to the terms and conditions on which he was to use the dock, we are of opinion on the facts proved in the cause, that the right to use the dock in connection with and for the benefit of the wharf, as it had been openly used by the grantors, would have passed to the grantee by implication of law as an easement, or as part of the property granted.
But, such is not the case. There is no absence here of an express contract • between the parties on the very question; and there is, therefore, no room for implica-, tion or presumption. The case stands “upon the ground of convention between- those who have a disposing power.” And about the terms and effect of that “ convention” there is, we think, no room for discussion. After making the western side of the dock the eastern boundary of the property conveyed, which included no part-of the dock, the parties, to preclude, apparently, the *261 very argument of implication and presumption now used, go on to say: “And the said parties of the first part hereby covenant to alloio the said Josiah Wills to have the common use with themselves or their tenants of the dock, herein first mentioned, for the purpose of landing goods on his wharf from vessels or boats which may enter therein, as long as the said dock and adjoining premises are owned by the parties of the first part, or until they may choose to fill up the said dock.” And this qualified privilege of using the dock was allowed to the grantee, not in consideration of the purchase money paid for the wharf property and as part of the grant, but in consideration of the following stipulation expressly entered into on the part of said Wills, viz: “ The said Wills, in consideration thereof, hereby undertaking to clean out, from time to time, the said dock, at his own expense.” The grantee is not only confined by the “convention” of the parties to a very restricted use of the dock, but he is made to pay for that limited use a consideration outside the consideration for the property. In the face of such express contract the court is of opinion that no implication or presumption of law in favor of a different and more extended use of the dock can arise. This conclusion is in direct accordance with the general doctrine of this court, in Scott v. Beutel, and is not in conflict with the cases referred to by the counsel for the appellant. Indeed those cases lead to the same result. They establish the principle, that whether the property or easement claimed will pass or not depends “upon the intention of the parties collected from the instrument and explained by reference to the facts:” Being, in substance, the principle laid down by this court, in Scott v. Beutel. In one of the cases, United States v. Appleton, 1 Sumner R. 492, 502, Judge Story says: “ The general rule of law is, that where a house or store is conveyed by the owner *262 thereof, every thing belonging to and in use for the house or store as an incident or appurtenant, passes by the grant. It is implied from the nature of the grant, unless it contains some restrictions, that the grantee shall possess the house in the same manner, and with the same beneficial rights, as were then in use and belonged to it.” If, on the other hand, the grant does contain restrictions, the irresistible conclusion from the cases is, that the case must be ruled by the express restrictions— by the convention of the parties.
We are of opinion, therefore, that by the grant to Wills, in this case, no general right to the use of the dock, as the grantors had used it, passed to him; that the extent of his right under the grant was limited and defined by the express terms of special covenant,, and that the right to use it at all, would wholly cease whenever his grantors should cease to own the dock,and other property of which it was claimed to be part, or when they should think proper to fill it up.
But it is further contended, that the dock is not private property at all, but that it is a part of Elizabeth river, below low water mark; and is, therefore, the property of the State and a public highway. It will be observed that this claim is not preferred by the State herself, or by any one claiming under her by grant or otherwise. Neither the State, nor the city of Norfolk, nor the citizens of either, save the appellant alone, seem to have ever at any time set up such a pretension. On the contrary, the State, the city of Norfolk, and the citizens of each, have uniformly treated them as private property, from a time whereof the memory of men now living runneth not to the contrary. As far back as October 1705, in the 4th year of Queen Anne, it was enacted that “ if any person having a lott in town, upon the water side, will build out into the water before his own lott, *263 for the better conveniency of landing and shipping off goods, such persons shall have the whole benefit of such building; and the land so built upon shall be reckoned as part of his own lott, and it shall entirely be his as the lott itself, without any further duty or acknowledgement.” 3 Hen. Stat. at L., p. 412, ch. 42. By the same law, Norfolk was made a town. P. 415. How soon after the passage of this law the wharves referred to in the proceedings were constructed does not appear; for, as we have seen, no living witness can testify to their origin. Manifestly, however, either under the operation of this law, or some other law or custom recognized by the State, wharves and docks had been constructed in Norfolk long before the year 1801, which were recognized by the State as private property ; for, on the 20th January 1801, an act was passed which recited that there were docks and wharves within the borough of Norfolk, which had or might become ruinous and dangerous to the health of the inhabitants; for the prevention^ whereof the 1st section of the act provided: “That the court of hustings of the said borough shall be and they are hereby empowered, at a court to be held in February or March annually to appoint three discreet persons, being housekeepers, as wardens of the port, for the purpose of inspecting the said docks and wharves, who shall take an oath in the said court faithfully and impartially to execute the said office; and if they, or any two of them, shall be of opinion that any dock or wharf is a nuisance, they shall immediately give notice in writing to the owner thereof, requiring him or her to remove such nuisance, either by deepening the place or filling it up, allowing a reasonable time for performing the same.” And the section goes on to provide, that for failure to comply with the portwardens’ direction, the party shall be punished by indictment and fine.
*264 The 2d section provided, that if the fine should prove insufficient to remove the nuisance, “and the oioner of the place shall not contribute to remove it, like proceedings against him shall be repeated.
The 3d section recites that “owners of lots on the rivers and creeks are constantly extending their wharves and breastworks beyond each other, whereby navigation is greatly obstructed,” and requires the portwardens to run a line in the water from the east to the west end of said borough, and also on each side of the creeks, so as to leave a pass-way of 40 feet at least beyond .which no wharf should be extended, under a penalty of $10,000. 2 Hen. Stat. at Lar., New Series, ch. 48, p. 282-3. And the 2d section of the act of February 4th, 1818, entitled “an act to extend the jurisdiction and enlarge the powers of the corporation of the borough of Horfolk,” authorizes the corporation, among other things, to provide for the “ opening, filling and cleaning docks.”
Under and by virtue of these laws the vendors of Southgate, Taylor and others, were as owners of the dock in question, actually ordered by the proper authorities of the corporation, soon after their purchase of the dock, to fill up a portion thereof; and under that order they filled up about fifty feet of it.
. It will be remembered, also, that the portwarden’s line does not run into this creek at all, as it is required to be run into creeks, but runs along the main channel of Elizabeth river directly across the mouth of the dock, so as to leave the entire dock within the line.
In addition to all this, Wills and those claiming under him, have in the most solemn form, in the deed under which they claim the wharf property,-acknowledged the dock to be private property, and to be owned by their ■grantors. This acknowledgment occurs both in the granting part of the deed and in the special covenant.
*265 Under such circumstances the court is inclined to the opinion, that any title which the commonwealth may at an earlier period have been entitled to assert to this dock, if not expressly surrendered, has been by an almost irresistible implication, waived and abandoned in favor of those claiming to be owners thereof.
But, however that might be, were the commonwealth a party claiming the dock, we are clearly of opinion, in the absence of such claim, and in the face of the apparent waiver and abandonment aforesaid, that the appellant cannot rely upon that supposed title in derogation of the solemn acknowledgment and express contract of his grantor to. the contrary.
The decree must be affirmed.
Decree arrirmed.